White, J.
Before proceeding to consider the questions raised in this case on the merits, it is proper to dispose of a preliminary question raised in argument as to whether the court below had jurisdiction of the action.
The objection to the jurisdiction is placed on two grounds:
1. That the act of April 10, 1856, which authorizes the court to enjoin the illegal assessment of taxes, and the collection of taxes illegally assessed, does not apply to taxes. assessed on real estate.
2. That the operation of the act is limited to the Courts of Common Pleas.
We consider neither of these positions well taken. There is no indication in the terms of the act of an intention to restrict its operation to taxes assessed on personalty, and we see no good reason why it should be so restricted.
The act in terms confers the jurisdiction therein mentioned on .the Courts of Common Pleas; and if the jurisdiction in question depended alone on that act, the Superior *240 Court could of course exercise no authority under it.. Rut section 20 of the act to establish the Superior Court provides that all laws then in force, or which may thereafter be enacted, conferring jurisdiction, in the classes of actions therein enumerated, upon the Courts of Common Pleas, shall extend to the Superior Court as fully as they extend to the Courts of Common Pleas, unless the same be-inconsistent with that act or plainly inapplicable. The-original suit belongs to the class of actions enumerated in the act to establish the Superior Court, and the authority-conferred by the act of April 10, 1856, is not inconsistent with that act nor inapplicable to the Superior Court.
On the merits of this case two questions arise for determination. The first is whether the legislature is invested with authority to exempt from taxation the property in question. If it has such authority, the second question is whether the authority has been exercised.
The first question depends on the construction of section-2, article 12, of the constitution; and the second on the-construction of section 8 of the tax law of 1859, as-amended March 21, 1864. S. & S. 761.
The constitutional provision declares that “ laws shall be-passed, taxing by a uniform rule. ... all real and personal property, according to its true value in money; but burying-grouuds, public school-houses, houses used exclusively for public worship, institutions of purely public-charity, public property used exclusively for any public purpose, . . . may, by general laws, be exempt from taxation.”
The first question arising on the construction of this-constitutional provision is as to the meaning of the terms “ public school-houses.”
It is claimed for the plaintiffs in error that by these terms-are meant school-houses owned by the public, and designed for the schools established and conducted under the authority of the state; while the defendant in error contends that the terms embrace all school-houses in which schools are carried on that are open to the public without charge,. *241 irrespective of the question as to who owns the property, or under what authority the schools are conducted.
The word “ public ” is used in various senses. It is sometimes applied to describe the use to which the property is applied; at others, to describe the character in which it is held. The circumstance that the use of the property is free, is not a necessary element in determining whether the use is public or not. If the use is of such a nature as concerns the public, and the right to its enjoyment is open to the public upon equal terms, the use will be public whether compensation be exacted or not. Thus, on some public highways, tolls are charged, while others are free; but both are equally public. Railways owned by private corporations, and the canals owned by the state, are public highways, yet compensation is exacted from the public for their use. A college consisting of a private corporation, and having a private foundation, is devoted to a public use, yet the use is none the less public because tuition is charged.
So, a hotel, which is private property, is called a public house, because it is for the use of the public. And if tuition were required to be paid for attending the schools, established and carried on under the authority of the state,. the schools would be no less public than they now are.
The question whether the use is free or not, or is established with a view to profit, becomes material only where' some other element is involved than that of its public character — as, for instance, whether the use is charitable as well as public.
The constitution manifests careful circumspection in regard to restricting the exercise of legislative discretion on the subject of taxation.
The provision now under consideration enjoins upon the general assembly, in explicit terms, the duty of passing laws taxing by a uniform rule all real and personal property according to its true value in money. In discharging this duty, however, it is authorized to exempt, by general laws, certain specified classes of property from taxation; but *242 such laws are made subject to alteration or repeal, and the value of all property exempted is required from time to time to be ascertained and published;
With the exception of a limited amount of personal property, which is authorized to be allowed to individuals, the property that may be exempted from taxation depends either upon its ownership,or the use to which it is applied, or upon both.
The exemption of “ burying-grounds,” “houses used exclusively for public worship,” and “ institutions of purely public charity,” does not depend on the ownership of the property. The uses that such property subserves, constitute the grounds for its exemption. The burying-grounds may be either public or private ; but the houses of worship must be houses of public worship, and the institutions of charity must be of a charity that is purely public.
The other classes of property that may be exempted from taxation, are described as “ public school-houses,” and “ public property used exclusively for any public purpose.”
It appears to us that the word “ public,” as applied to ■school-houses, is used in the same sense in which it is used in the second instance, as applied to property; and that the school-houses intended are such as belong to the public, such as are designed for the schools established and conducted under the authority of the public. In the classification, public school-houses, from the nature of their use, are named as a distinct species of public property that may be exempted ; and we see nothing inconsistent or unreasonable in such specific designation, arising from the fact that the subsequent provision authorizes the exemption ■of public property generally where it is used exclusively for some public purpose.
If all school-houses in which schools are kept, that are open to such of the public as choose to patronize them, were to be regarded as public school-houses, such property might be exempted, although owned by private parties and used by them solely with the view to profit in prosecuting their business. That a school-house thus owned and used *243 would not be a public school-house, within the meaning of the constitutional provision, is clear; nor does it seem to us that it would become such from the mere fact that the school taught in it might be a free school.
The next question is whether the constitution authorizes the exemption of the school property in question, as property devoted to public charity.
The meaning of the word “ charity,” in its legal sense, is different from the signification which it ordinarily bears. In its legal sense it includes not only gifts for the benefit of the poor, but endowments for the advancement of learning, or institutions for the encouragement of science and art, and, it is said, for any other useful and public purpose. 3 Steph. Com. 229. Lord Camden described a charity as a “ gift to a general public use, which extends to the rich as well as the poor.” Ambl. 651.
The maintenance of a school is a charity. Gifts for the following purposes have been declared to be charities: Eor schools of learning, free schools, and scholars of universities (2 Story’s Eq. Jur., sec. 1160); to establish new scholarships in a college (Attorney-General v. Andrews, 3 Ves. 633); to found and endow a college (Attorney-General v. Bower, 3 Ves. 714); and in the case of the American Academy v. Harvard College, 12 Gray, 594, it was said to be well established, that “ a gift designed to promote the public good, by the encouragement of learning, science, and the useful arts, without any particular reference to the poor, is a charity.”
And in Phillips v. Bury, 2 Term, 353, it was said by Lord Holt: “Now, there is no manner of difference between a college and a hospital, except only in degree; a hospital is for those that are poor, and mean, and low, and sickly; a college is for another sort of indigent persons; but it hath another intent, to study in, and breed up persons in the world, that have not otherwise to live; but still it is as much within the reason of hospitals, . . . and both are eleemosynary.”
But admitting the charitable nature of the use to which *244 the property is devoted, the next question is whether it comes within the description of “ institutions of purely public charity.”
It is to be observed that the duty to tax as well as the1 authority to exempt from taxation, has reference to property. It is property alone that is required to be taxed, and property also is the object of the authorized exemptions.
Two questions arise on this branch of the subject: 1. Whether the charity to which the property is devoted is purely public; 2. Whether it is competent for the legislature to recognize these schools, as they are established and carried on, as institutions within the meaning of the-constitutional provision.
As to the first of these questions, it seems to us the-charity is to be regarded as purely public. For the purpose of determining the public nature of the charity, it is not material through what particular forms the charity may be administered. If it is established and maintained for the use and benefit of the public, and so conducted that the public can make it available, this is all that is required.
But is it competent for the legislature to treat the buildings and lands connected therewith, used for carrying on the schools, as institutions, or as property belonging ta institutions? The term “institution” is sometimes used as descriptive of the establishment or place where the business or operations of a society or association is carried on; at other times it is used to designate the organized body» It is used in both senses in the third section of the tax law brought under consideration in this case. It is used in the former sense in the first clause of the section, where it is-declared that “ all lands connected with public institutions-of learning, not used with a view to profit,” shall be exempt from taxation. In the sixth clause of the section: it is used in the latter sense, and the property referred. to is described as belonging to the institutions named.
As used in the constitutional provision, the term may be-applied by legislation in either sense; but in whichever- *245 ■sense it may be used, its only operation, as respects taxation, will be its effect upon property.
Laying out of view the nature of the organization by which the charity is administered, the property in question stands on the same footing as the property devoted to the support of colleges and other higher institutions of learning not founded by the state. All of these institutions ■stand, as respects their claim to exemption from taxation under the constitution, on the ground of their being institutions of purely public charity. If property is appropriated to the support of a charity which is purely public, we see no good reason why the legislature may not exempt it from taxation, without reference to the manner in which the legal title is held, and without regard to the form or ■character of the organization adopted to administer the charity. To illustrate: If the organization by which these schools are maintained were incorporated, no question could be made as to the existence of authority to exempt their property from taxation. Now, if the property is appropriated to the same public uses, aud the same ends are accomplished, we see no constitutional obstacle to prevent the legislature from exempting it as fully without incorporation as with it. What the legislature might accomplish indirectly, through the intervention of a corporation — a thing of its own creation — it may accomplish directly. Nor is it essential to the existence of an institution as an organization that it should be constituted under corporate ■or legislative authority. In re the Manchester College, 19 Eng. L. & Eq. 404.
But admitting the constitutional power of the legislature to make the exemption, the next question is, whether the exemption is authorized by the statute.
The classification of the property that may be exempted ■from taxation is much more minute in the statute than in the constitution. The constitutional provision deals with legislative power, and defines its limits. The statute deals directly with the property, and classifies it according to legislative discretion; and if the property which the statute *246 undertakes to exempt comes within the exemptions authorized by the constitution, it is immaterial how the property is classified or described.
The section of the statute under consideration consists of nine subdivisions, in which are described the various classes of exempted property. Where persons or organizations are mentioned in the section, it is only done as a means of describing property, and the uses to which it is applied, for the purpose of drawing the line between that which is exempt and that which is not. This is apparent from the first clause of the section, which declares that all property thereinafter described, shall be exempt from taxation.
The property exempted by the first subdivision of the section is described as follows :
“ All public school-houses and houses used exclusively for public worship, the books and furniture therein, and the grounds attached to such buildings necessary for the proper occupancy, use, and enjoyment of the same, and not leased or otherwise used with a view to profit; all public colleges, public academies, all buildings connected with the same, and all lands connected with public institutions of learning, not used with the view to profit. This provision shall not extend to leasehold estates of real property held under the authority of any college or university of learning of this state; provided, nevertheless, that all leaseholds, or other estates or property whatsoever, real or personal, the rents, issues, profits, and income of which have been or hereafter shall be given to any city, town, village, school-district or subdistrict, in this state, exclusively for the use, endowment, or support of schools for the free education of youth without charge, are and shall be exempt from taxation so long as such property, or the rents, issues, profits, and income thereof, shall be used and applied exclusively for the support of free education by such city, town, village, district, or subdistrict.”
A consideration of this provision of the statute shows that the word “public,” as here applied to school-houses, colleges, and institutions of learning, is not used in the sense *247 of ownership, but as descriptive of the uses to which the property is devoted. The schools and instruction which the property is used to support, must be for the benefit of the public. The word public as applied to school-houses, is obviously used in the same sense as when applied to colleges, academies, and other institutions of learning. The statute must be construed in the iight of the state of things upon which it was intended to operate. At the time of its passage,' there were few, if any (and we know of none), colleges or academies in the state owned by the public, while there were many such institutions in the different parts of the state owned by private, corporate, or other organizations, and founded, mostly, by private donations.
Besides, the condition prescribing that the property, in order to be exempt, must not be used with a view to profit, does not seem appropriate if intended to apply only to institutions established by the public. Such institutions are never established and carried on by the public with a view to profit. But the condition has marked significance when applied to private property, which is often used for the purposes of education, like property in ordinary business, as a means of profit. But when private property is appropriated to the support of education for the benefit of the public without any view to profit, it constitutes a charity which is purely public. When the charity is public, the exclusion of all idea of private gain or profit is equivalent, in effect, to the force of “ purely ” as applied to public charity in the constitution.
The remaining question is, whether the court erred in exempting the grounds attached to church edifices and the parsonages erected on such grounds.
The authority of the general assembly to exempt this description of property is limited to “ houses used exclusively for public worship.” The statute declares the exemption in thefollowing language: “ houses used exclusively for public worship . . . and the grounds attached to such buildings necessary for the proper occupancy, use, *248 and enjoyment of the same, and not leased or otherwise used with a view to profit.”
The plaintiff in error claims, in effect, that only so much ground can be exempt as is essential to support the church •edifice, and to afford facilities for light and air, and ingress and egress to and from the building.
We do not think the constitution requires a construction so rigid; nor, when fairly construed, do we see in the provision of the statute an unwarranted assumption of power.
The express authority given in the constitution to exempt buildings of the description named, carries with it, impliedly, authority to exempt such grounds as may be •reasonably necessary for their use. The ground in such case becomes annexed to the building as an incident; but the ground so annexed must subserve the same exclusive use to which the building is required to be devoted.
It is not required that the ground should be indespensabie to the use of 'the building as a place of worship. If the ground is no more than is reasonably appropriate to the purpose, and is used for no other, it comes fairly within the limits prescribed by the constitution and the statute.
One of the conditions prescribed by the statute is, that the ground, in order to be exempt, must not be used with a view to profit. This excludes, no doubt, not only ground used for present profit, but such as may be held by way of investment for prospective profit.
But a parsonage, although built on ground which might otherwise be exempt as attached to the church edifice, does not come -within the exemption. The ground in such case is appropriated to a new and different use. Instead of its being used exclusively for public worship, it becomes a place of private residence. Nor does it make any difference that, by the usages of the church, the presence of a priest or pastor is essential to conduct the services of public worship. Other persons are necessary to carry on public worship as well as a minister to conduct the services. There must be a laity or congregation as well as a minister *249 or preacher, and it is equally necessary that they should have places of abode; yet it would not be claimed that their residences could be exempt.
Eor the purposes of taxation, there is a marked distinction between property appropriated for the support of public worship, and that which is appropriated as a place of public worship. The exemptions authorized are not of -such houses as may be used for the support of public worship, but of houses used exclusively as places of public worship.
Nor does it seem to us that the question as to whether -the parsonages are taxable or not, depends upon their proximity to the church edifice. On the contrary, that question, in our opinion, is to be determined by the direct and immediate uses to which they are applied.
The view we take of this question is supported by the principle of construction adopted in Kendrick v. Farquar, 8 Ohio, 196, and in Cincinnati College v. The State, 19 Ohio, 110.
The judgment, in so far as it enjoins the collection of the taxes on the parsonages, is reversed, and in other respects affirmed.
Day, C.J., McIlvaine, Welch, and Rex, JJ., concurred.